NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-486

COMMONWEALTH

vs.

ROMILSON B. FERREIRA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the District Court, the defendant was convicted of (1) assault and battery on a police officer (ABPO), in violation of G. L. c. 265, § 13D (2015); (2) resisting arrest, in violation of G. L. c. 268, § 32B; and (3) disorderly conduct, in violation of G. L. c. 272, § 53 (2015). On appeal, the defendant claims that (1) the denial of his motion to continue the trial constituted structural error; (2) he received ineffective assistance of counsel; (3) the evidence was insufficient to establish that he acted with the knowledge and intent required to sustain a conviction for either ABPO or for resisting arrest; and (4) the absence of a voluntary

intoxication instruction created a substantial risk of a miscarriage of justice. We affirm.

Background. We summarize the evidence presented at trial, reserving some details for subsequent discussion.

On October 10, 2016, the defendant, after ingesting "a line of cocaine" and alcohol, became fearful that unidentified people were trying to harm him. The defendant sought refuge at a Stop & Shop grocery store in Marstons Mills. Barnstable Police Officer David Valiga was dispatched to the store, and on arrival, he saw the defendant situated behind the deli counter, where he was arguing with Stop & Shop employees. Valiga, in full uniform, identified himself as a police officer and asked the defendant to explain what "was going on." The defendant told Valiga that somebody was trying to kill him. Valiga described the defendant as exhibiting paranoia, and he saw that the defendant's eyes were bloodshot and his pupils were dilated. When Valiga asked the defendant if he was under the influence of any drugs, the defendant stated he used cocaine a few hours prior.

Valiga requested that the defendant exit the store with him to continue their conversation in order to quell the disruption to the Stop & Shop, as a crowd of about twenty people had formed at the deli counter. Although Valiga described the defendant as appearing "[v]ery paranoid, very erratic," the defendant was not

2

confrontational; the defendant agreed to go outside. While they were exiting the store, however, the defendant suddenly stated, "[t]hey're trying to kill me again" and expressed concerns that Valiga was not a police officer. When the defendant suddenly grabbed Valiga by his jacket, Valiga responded by taking the defendant to the ground. The defendant then punched Valiga in the chin and grabbed Valiga's firearm. As they struggled, Valiga told the defendant that he was under arrest, and commanded him to stop resisting. Once Valiga and Barnstable Police Officer Adam Ruggieri subdued and handcuffed the defendant, he became cooperative.

Discussion. 1. Denial of a request for a continuance. We review the denial of a request for a continuance for abuse of discretion. Commonwealth v. Cavanaugh, 371 Mass. 46, 50-51 (1976). "[T]here is no 'mechanical test' for determining whether the denial of a continuance constitutes an abuse of discretion because we must examine the unique circumstances of each case, particularly the reasons underlying the request." Commonwealth v. Pena, 462 Mass. 183, 190 (2012). A judge should grant a continuance only when justice so requires, balancing the requesting party's need for additional time against concerns about inconvenience, cost, potential prejudice, and the burden of the delay on both the parties and the judicial system.

3

Commonwealth v. Gilchrest, 364 Mass. 272, 276 (1973); Mass. R. Crim. P. 10 (a) (1), 378 Mass. 861 (1979).

Moreover, Mass. R. Crim. P. 10 (a) (1) provides that after a case has "entered upon the trial calendar, a continuance shall be granted only when based upon cause . . . ." There is a nonexhaustive list of factors "a judge shall consider in determining whether to grant a continuance in any case." Mass. R. Crim P. 10 (a) (2), 378 Mass. 861 (1979). These factors include:

> "(A) Whether the failure to grant a continuance in the proceeding would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice.
>
> "(B) Whether the case taken as a whole is so unusual or so complex . . . that it is unreasonable to expect adequate preparation of the case at the time it is scheduled for trial.
>
> "(C) Whether the overall caseload of defense counsel routinely prohibits [their] making scheduled appearances, whether there has been a failure of diligent preparation by a party, and whether there has been a failure by a party to use due diligence to obtain available witnesses."

Id.

On the morning of the trial date, December 20, 2017, the defendant moved for a continuance to pursue an expert witness to assist in his defense of intoxication. The trial date in this case had been continued multiple times, at least once by the defendant. The judge denied the motion after conducting an extensive review of the record, which reflected numerous

4

continuances and court dates.[1]  The judge also considered the lack of progress the defendant had made in securing an expert, as the defendant had not had any contact with an expert prior to the trial date.

Moreover, when the judge asked counsel how an expert would offer an opinion that would assist in determining whether the defendant was so intoxicated that he lacked knowledge the victim was a police officer, counsel responded, "I don't think I could say exactly what the expert would opine other than to say that . . . [there was] the possibility of cocaine or intoxication negating the specific intent there."  The judge, after confirming with counsel that evidence of the defendant's condition would be admitted at trial independent of expert witness testimony, reasonably concluded counsel's proffer to be inadequate to support the motion to continue considering the nature of the speculative expert testimony.  See Commonwealth v. Bryer, 398 Mass. 9, 15 (1986), citing Gilchrest, 364 Mass. at 277 ("no abuse of discretion when a judge refused to continue a trial to allow expert testimony regarding the effects of Librium in a situation where the 'expert testimony would not have been based on a physician's observations of the defendants themselves

---

[1] Before denying the motion to continue, the judge noted that the docket reflected the case had had four pretrial hearings, two jury status dates, and at least three motions to continue.

when under the influence of Librium'").  By carefully considering the history of continuances and the nature of the evidence, as well as the relevance and weight of the purported expert witness testimony, the judge did not abuse her discretion in denying the defendant's motion to continue the trial.

Furthermore, we reject the defendant's argument that the denial of his request for a continuance amounted to structural error.  Though he contends that it infringed on his Federal and State constitutional rights to call witnesses to testify on his behalf, "the right to call witnesses is not absolute; in the face of legitimate demands of the adversarial system, this right may be tempered according to the discretion of the trial judge" when considering the "legitimate demands of the adversarial system" (quotations omitted).  Commonwealth v. Durning, 406 Mass. 485, 495 (1990).

2.  Ineffective assistance of counsel.  The defendant raises, for the first time on appeal, a claim of ineffective assistance of counsel.  "The preferred method for raising claims of ineffective assistance of trial counsel is through a motion for a new trial."  Commonwealth v. Davis, 481 Mass. 210, 222 (2019).  "Relief on a claim of ineffective assistance based on the trial record is the weakest form of such a claim because it is 'bereft of any explanation by trial counsel for [their] actions and suggestive of strategy contrived by a defendant

6

viewing the case with hindsight.'" Commonwealth v. Gorham, 472 Mass. 112, 116 n.4 (2015), quoting Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). Relief may be afforded in such circumstances "when the factual basis of the claim appears indisputably on the trial record" (quotation omitted). Gorham, supra. "[W]here the contested issue concerning the attorney's performance is clear on the extant record, is a narrow exception to the general principle that claims of ineffective assistance of counsel, at least in the first instance, should be advanced in the context of a motion for a new trial" (quotation omitted). Commonwealth v. Anderson, 58 Mass. App. Ct. 117, 124 n.8 (2003), cert. denied, 540 U.S. 1009 (2003).

The defendant contends that counsel performed deficiently by first, failing to retain, develop, and introduce expert evidence of the defendant's "cocaine induced" psychosis; and second, by failing to argue that voluntary intoxication prevented the defendant from forming the intent required for ABPO and resisting arrest.

The defendant's claim that trial counsel failed to call an expert witness to testify as to the defendant's purported "cocaine induced atypical psychosis," a condition raised for the first time on appeal, cannot be resolved without some evidence, in addition to counsel's proffered basis for calling an expert and the evidence adduced at trial, "bearing on the testimony

7

that [a witness] would likely have provided." Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994). Thus, we are not persuaded that the defendant's claim as to counsel's failure to develop expert witness testimony falls within this narrow exception such that the factual basis of the claim appears indisputably on the trial record allowing us to decide it on direct appeal. See id.

In addition, we do not discern from the record that counsel's approach to the issue of voluntary intoxication fell below that of an ordinary, fallible lawyer. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). In reviewing the closing argument in the context of the evidence adduced at trial, we conclude that counsel sufficiently implied the defendant's use of cocaine contributed to his "addled state," which led to him believing the police officers were imposters. For instance, counsel elicited testimony from Valiga that "something[] [was] not right [with the defendant]," as the defendant was showing symptoms of central nervous system impairment, as well as testimony from Ruggieri that the defendant's behavior "was consistent with someone that was taking drugs." Additionally, counsel elicited testimony from the defendant as to his hallucinations, consumption of cocaine and alcohol, and lack of sleep in the hours before the incident. Thus, when viewing the entire trial record, we conclude counsel adequately pursued an

8

impairment defense aimed to negate the knowledge element of both ABPO and resisting arrest to the extent that his performance did not fall measurably below that of an ordinary fallible attorney. See Saferian, supra.

3. Sufficiency of the evidence. We review sufficiency of the evidence for "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

When proof of knowledge is an element of the crime, a defendant's intoxication "bears on the defendant's ability to possess the requisite knowledge of the circumstances in which he acted" (quotation omitted). Commonwealth v. Andrade, 422 Mass. 236, 245 (1996). The fact finder "may consider evidence of the defendant's words and conduct before, during, and after the offense in reaching their conclusion on the defendant's . . . capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law" (quotation and citation omitted). Commonwealth v. McGillivary, 102 Mass. App. Ct. 501, 504 (2023).

The defendant contends that he suffered from an "atypical psychosis" as a result of his cocaine consumption that

9

debilitated his mental state, and as a result, he did not possess the requisite knowledge that Valiga was a police officer, an element that is necessary to establish both ABPO[2] and resisting arrest.[3]  The defendant relies on his testimony that he ingested cocaine approximately five hours prior to arriving to Stop & Shop.  He further maintains that his statements to Valiga and Ruggieri -- "You're not police.  You're not police.  Someone call the police." -- demonstrate that he did not understand that Valiga and Ruggieri were police officers.

The circumstantial evidence adduced at trial supported the judge's conclusion that the defendant had the requisite knowledge that Valiga and Ruggieri were police officers when he punched Valiga and resisted arrest.  The officers were dressed

_____

[2] "The crime of assault and battery is defined as the 'intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another.'" Commonwealth v. Moore, 36 Mass. App. Ct. 455, 459 (1994), quoting Commonwealth v. McCan, 277 Mass. 199, 203 (1931).  "The offense of assault and battery on a police officer requires a specific intent to strike a police officer"; to convict a defendant of ABPO, the Commonwealth must prove "two additional elements beyond those required for simple assault and battery . . . -- the officer must be engaged in the performance of [their] duties at the time and the defendant must know that the victim was an officer engaged in the performance of [their] duties." Moore, supra at 461.

[3] The crime of resisting arrest is "a general intent crime that requires proof that the defendant 'knowingly' prevented or attempted to prevent a police officer acting under color of [their] official authority from effecting an arrest . . . ." Commonwealth v. Mountry, 463 Mass. 80, 91 (2012).

in their full uniforms and identified themselves as police to the defendant.  The defendant even acknowledged multiple times during his trial testimony that Valiga and Ruggieri were police officers when he encountered them.  The judge was not required to credit the defendant's testimony that he suddenly disbelieved that Valiga was a police officer when Valiga attempted to escort the defendant from behind the deli counter.  See Commonwealth v. James, 424 Mass. 770, 785 (1997), quoting Commonwealth v. Ruci, 409 Mass. 94, 97 (1991) ("When assessing the sufficiency of the evidence, we resolve issues of credibility in favor of the Commonwealth; '[i]t does not matter that some of the evidence could be characterized as equivocal or contradictory'").  Accordingly, in viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence supported the guilty findings.

4.  Absence of voluntary intoxication instruction.  The defendant opted to proceed with a jury-waived trial.  "In a jury-waived or nonjury case, the judge need not expressly instruct [themselves]. . . .  This is because we presume that the judge correctly instructed [themselves] on the law of evidence" (quotation omitted).  Commonwealth v. Sepheus, 468 Mass. 160, 170 (2014).  In the instant bench trial, the judge correctly applied the law as to specific intent, and the absence

11

of an express instruction did not create a substantial risk of miscarriage of justice.

Judgments affirmed.

By the Court (Vuono, Rubin & Smyth, JJ.[4]),

Clerk

Entered:  December 6, 2024.

---

[4] The panelists are listed in order of seniority.